IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-02596-MSK-CBS

DAVID JACKSON,

      Plaintiff,

v.

ERIC KEN SHINSEKI, United States Secretary of Veterans Affairs, and
LYNETTE A. ROFF, Director, VA Eastern Colorado HCS,

      Defendants.

---

OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss Mr. Jackson's Amended Complaint[1] (**# 51**), Mr. Jackson's response (**# 53**), and the Defendants' reply (**# 56**); Mr. Jackson's Objections (**# 40**) to the December 16, 2010 Order (**# 36**) of the Magistrate Judge denying Mr. Jackson's motion to compel and motion for leave to file an amended pleading, and the Defendants' response (**# 43**); Mr. Jackson's Objections (**# 52**) to the Magistrate Judge's February 7, 2011 Minute Order (**# 50**) denying certain discovery requests by Mr. Jackson, and the Defendants' response (**# 54**); and Mr. Jackson's Objections (**# 67**) to the Magistrate Judge's May 11, 2011 Minute Order (**# 66**) denying Mr. Jackson's emergency motion to effectuate service, the Defendants' response (**# 68**), and Mr. Jackson's reply (**# 69**).

---

[1]Mr. Jackson's filing of an Amended Complaint and the Defendants' motion challenging that amended pleading effectively moots the Defendants' prior Motion to Dismiss (**# 42**).

**FACTS**

The Court's ability to recount the relevant facts is somewhat complicated by a certain degree of impenetrability in Mr. Jackson's *pro se* filings.  Those filings are somewhat jumbled as to chronology, erroneously assume a reader's familiarity with certain proceedings involving Mr. Jackson without providing necessary context and detail, and often digress into legal arguments of dubious relevance.  Nevertheless, the Court is obligated to liberally construe Mr. Jackson's pleadings, overlooking (to the extent possible) defects in Mr. Jackson's use legal terminology and proper English grammar and syntax.  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  With that obligation in mind, the Court engages in the following attempt to untangle Mr. Jackson's allegations and claims.  Unless otherwise indicated, the Court has extracted the information below from Mr. Jackson's Amended Complaint (**# 47**), as well as from exhibits attached by Mr. Jackson to his initial Complaint (**# 4**), and which he continues to refer to (but not attach) in the Amended Complaint.

Until some point in 1994, Mr. Jackson was employed by the Department of Veteran's Affairs ("VA") as a Ward Clerk.  In or about April 1994, an Employee Assistance Program counselor named Pam Till raised some concerns about Mr. Jackson's suitability for continued employment.  According to a June 22, 2007 letter from the VA, attached as an exhibit to Mr. Jackson's Complaint, he had been "exhibiting signs of paranoia and threatening behavior to staff."[2]  At the VA's instruction, Mr. Jackson underwent a mental evaluation with a psychiatrist retained by the VA.  At the conclusion of that evaluation, the psychiatrist sent a report of the

---

[2]Elsewhere in the Amended Complaint, Mr. Jackson states that "the condition that concerned Pam Till . . . is still unknown to Mr. Jackson."

evaluation to the VA, but did not provide a copy to Mr. Jackson.  The explanation for not providing Mr. Jackson with a copy was that the psychiatrist had been retained by the VA and that Mr. Jackson would need to obtain a copy of the report from the VA.[3]

One of the recurring complaints of Mr. Jackson in this case is his inability to obtain from the VA a copy of the psychiatric report compiled on him.  He contends that the VA's failure to maintain that evaluation record violations the Privacy Act.  5 U.S.C. § 552a(g)(1)(c) (providing for civil remedies when an agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination" relating to benefits of employment).  Mr. Jackson contends that "his medical records" – presumably the psychiatric evaluation report – "cleared him to return to duty," but nevertheless, he contends the VA relieved him of duty and terminated his employment on or about April 14, 1994.[4]

Mr. Jackson also believes that his termination of employment on what are essentially grounds of mental illness rendered him eligible for Worker's Compensation benefits under 5 U.S.C. § 8101 *et seq.*  Mr. Jackson contends that the VA had an obligation to supply him with

---

[3] It may be that Mr. Jackson underwent a second psychiatric evaluation.  The June 22, 2007 letter refers to Mr. Jackson being "cleared [to return to work] by his private psychiatrist." This letter also acknowledges that the VA "do[es] not have a copy of that psychiatric evaluation," but it is unclear whether that statement refers to the report of the psychiatric examination conducted by the VA's retained psychiatrist or Mr. Jackson's own private psychiatrist.

[4] This allegation appears to be inconsistent with the VA's representation in the June 22, 2007 letter that states that Mr. Jackson "was allowed to return to work" upon being cleared by his private psychiatrist.  Indeed, elsewhere in the Amended Complaint, Mr. Jackson states that "Pam Till . . . cleared Mr. Jackson to return to his job . . . holding that Mr. Jackson was not a threat to himself, the staff, or patients."

information and forms with which to make a claim for Worker's Compensation benefits, in particular, a form known as a CA-7.[5]  *Citing* 20 C.F.R. § 10.106 ("whenever an employee, as a result of an injury in the performance of duty, is disabled with loss of pay . . .the official superior shall furnish the employee with Form CA-7 for the purpose of claiming compensation and shall advise the employee of his or her rights under the [Worker's Compensation] Act").[6]  Mr. Jackson alleges that the VA did not provide him with a Form CA-7, nor did it advise him of his rights under the Worker's Compensation Act.  Mr. Jackson also appears to seek review of the VA's decision terminating his employment under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

In 2000, Mr. Jackson was involved with divorce proceedings, in which issues of child custody were raised.  Mr. Jackson contends that his wife "filed his military psychiatric records" in that proceeding, which caused the presiding judge to express to Mr. Jackson that the judge "received information on her desk about Mr. Jackson that troubled her."  Apparently, in or about 2007, the divorce court "took [away Mr. Jackson's] parental rights and ordered that he only have supervised visitation" with the children.  (Mr. Jackson also raises a concern that his wife "might

---

[5]As best the Court can determine, the CA-7 form Mr. Jackson refers to is a standard form for federal employees to claim Worker's Compensation benefits.  *See* http://www.dol.gov/owcp/regs/compliance/ca-7.pdf

[6]The Court has not located anything in the Code of Federal Regulations that precisely matches the cite and quote provided by Mr. Jackson.  However, 20 C.F.R. § 10.111 contains similar language.  Entitled "What should the employer do when an employee files an initial claim for compensation due to disability or permanent impairment?," that regulation provides that "When an employee is disabled by a work-related injury and loses pay for more than three calendar days, or has a permanent impairment or serious disfigurement as described in 5 U.S.C. 8107, the employer shall furnish the employee with Form CA–7 for the purpose of claiming compensation."

4

have sent his psychiatric record to the United States Department of Commerce," costing him another job in 2000.)  He states that he "still has no idea what the court[ ] was given."  Mr. Jackson also appears to complain that, in or about 2000, the VA sent copies of his medical records to the Arapahoe County Probation Department.

At some point thereafter, Mr. Jackson wrote to Congresswoman Diana DeGette "to find out how his psychiatric records found [their] way into the hands of his wife."[7]  He stated that he believed "someone in the [VA] . . . had released his psychiatric records in a retaliatory action surrounding his wrongful termination as Ward Clerk in the year 1994."  The VA responded to Mr. Jackson's concerns in its own letter to Congresswoman DeGette, noting (in addition to those portions quoted above) that "in 1999, records were released to both his wife Vera Jackson and to the Arapahoe Probation Department," apparently pursuant to "releases which were signed by Mr. Jackson" that the VA included with its letter.  Mr. Jackson contends that the releases he gave were narrow in their scope and "did not give the VA . . . permission to copy and redisclose [his] psychiatric records."

Mr. Jackson sought to obtain his own copies of the records the VA maintained about him, making a request on or about July 27, 2007.  The VA responded to his request on or about November 4, 2010.  He acknowledges that, on that date, the VA "mailed Mr. Jackson his medical records [from] April 1994," but appears to complain that this constituted "only a partial medical record."  With a few exceptions – the missing psychiatric evaluation report and the CA-7 form Mr. Jackson believes should have been included – it is not entirely clear from the

---

[7]The Court notes that Mr. Jackson states that, in 1994, "Mr. Jackson and his wife [met] with" the VA regional director, and that the director "informed Mr. Jackson in the presence of his wife that he needed to" undergo the psychiatric evaluation.

Amended Complaint what particular information Mr. Jackson believes should have been included in that record but was not.  Any complaints about the completeness of the record in any other respects are, at best, oblique.  For example, he states that the records "show that he was relieved of duty on 4/14/1994 based on [Ms. Till] questioning Mr. Jackson's stability[, y]et the June 22, 2007 letter lists the cause of Mr. Jackson's removal in part on paranoia."

Under the portion of the form Complaint where plaintiffs are asked to specifically identify their claims for relief, Mr. Jackson's Amended Complaint formally lists three claims. First, he alleges that "Under the Privacy Act, . . . Mr. Jackson requests a court order directed to the agency to produce all procedure, statutes, and laws used in 1999 to copy and redisclose [his] psychiatric record to his wife and Arapahoe Probation Department"; he requests "an exact copy of the records sent to" his wife and the Probation Department; he "requests a copy of the record showing the stated nature and the purpose for the agency having copied his records in the year 1999," apparently referring to the transmission of those records to his wife and the Probation Department; and he requests a copy of "the parties" – apparently the wife and Probation Department's – "request for the copies with their signatures and stated nature and purpose of the need for copies."   His second claim for relief seeks "a court order for all information used by the VA . . . to send him off-duty as a Ward Clerk . . . includ[ing] the initial writings by Pam Till showing her stated reasoning behind questioning [his] stability and . . . all information reported to the Federal Worker's Compensation Office."  His third claim for relief requests an order "to return Mr. Jackson to his federal position as Ward Clerk with back pay and benefits," and "any federal Worker's Compensation funds he should have received."

The Defendants move to dismiss (# 51) Mr. Jackson's Amended Complaint, arguing: (i)

the pleading fails to comply with Fed. R. Civ. P. 8, in that the Defendants cannot ascertain the scope and nature of the claims made; (ii) claims by Mr. Jackson that the VA improperly disclosed his records to his wife or the Probation Department in violation of the Privacy Act are barred by that statute's two-year statute of limitations; (iii) any claim by Mr. Jackson that the VA violated the Privacy Act's provisions entitling individuals to access their records is untimely, insofar as Mr. Jackson knew that the VA had not produced records responsive to his July 2007 request within a short period after that request, rendering the claim untimely; (iv) to the extent Mr. Jackson asserts a claim for denial of access to his records based on a request in September 2010, he fails to state a cognizable claim insofar as his only complaint appears to be that the "partial record" produced by the VA fails to contain the CA-7 form, a document Mr. Jackson alleges never existed anyway; and (v) if any claim survives, the VA should be substituted as the sole Defendant, insofar as the Privacy Act permits claims only against an "agency."  5 U.S.C. § 552a(g)(1).

Separately, Mr. Jackson raises a number of Objections pursuant to Fed. R. Civ. P. 72(a) to various rulings by the Magistrate Judge.  The Court will address the background and substance of these Objections as necessary in the course of its analysis.

## ANALYSIS

### A. Standard of Review

#### 1. *Pro se* pleadings

As noted above, Mr. Jackson appears in this matter *pro se*, and as a result, the Court reads his pleadings liberally, overlooking  technical formatting errors and other defects in the Mr. Jackson's  use of legal terminology and proper English.  *Haines* , 404 U.S. at 520-21; *Hall,*

935 F.2d at 1110.  However, *pro se* status does not relieve Mr. Jackson of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Jackson according to the same standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

        2.  <u>Motion to dismiss</u>

        In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

        In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis.  A pleader is not required to set forth "detailed factual allegations," but must

offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. The cases make clear that it is <u>facts</u>, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id.* at 1949-50.

When dismissal is sought on statute of limitations grounds, the moving defendant has the burden of demonstrating that, on the face of the Amended Complaint, the claim is untimely; if the defendant carries that burden, the plaintiff then has the burden of coming forward with facts justifying tolling the statute of limitations. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980).

## B. Statute of limitations

Mr. Jackson's itemization of his three claims (and any subclaims therein) can best be understood as follows. Claim 1 seeks production of certain records in the VA's possession, most notably copies of any request for records made by his wife and the Probation Department in 2000 and copies of anything that the VA produced in response to those requests. This claim appears to be cognizable under the Privacy Act pursuant to 5 U.S.C. § 552a(c)(1) and (3) (agency must keep an accurate accounting of each disclosure of a person's records to third parties and make that accounting available to the individual named in the record). Claim 2 is also one seeking production of certain records, this time seeking records relating to the VA's decision to terminate his employment. This claim appears to be cognizable pursuant to 5 U.S.C. § 552a(d) (agency must permit individual to gain access to his own records). Claim 3 seeks review of the VA's decision to terminate his employment in 1994 and to obtain Worker's

Compensation benefits from that termination.

Turning to Claim 3, it is clearly untimely. Whether the claim arises under the Privacy Act, with its two-year statute of limitations, *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002); the Administrative Procedures Act, with its six-year statute, *Strich v. U.S.*, ___ F.Supp.2d ___, 2011 WL 1322053 (D. Colo. Apr. 6, 2011) (slip op.), *citing Nagahi v. Immigration & Naturalization Service*, 219 F.3d 1166, 1171 (10th Cir. 2000); or some other statutory or common-law source, it is obvious that Mr. Jackson's commencement of this action in October 2010 comes far too late.

In Privacy Act cases, the cause of action arises and the statute of limitations begins to run when: (i) an error is made in maintaining the plaintiff's records, (ii) the plaintiff suffered a wrong as a result of such error, and (iii) the plaintiff either knew or had reason to know of the error. *Harrell*, 285 F.3d at 1293. Mr. Jackson alleges that his 1994 termination from the VA was based on the VA having inaccurate records concerning his psychiatric status. Thus, the first and second elements of a claim based on that termination – the VA maintaining an inaccurate record and Mr. Jackson suffering a wrong as a result – occurred in 1994. The termination put Mr. Jackson on notice that the VA considered him to be of unsuitable psychiatric disposition and, to the extent Mr. Jackson disagreed with that conclusion, Mr. Jackson had reason to promptly investigate the basis of the VA's decision and thus to learn of any error in the VA's records. Accordingly, Mr. Jackson's claim arising from the 1994 termination accrued, and the statute of limitations began running on that date that Mr. Jackson either knew of or should have known that the VA's records were in error.

Even assuming that Mr. Jackson would have required access to the VA's records in order

to ascertain that his termination was based on inaccurate information, the statute of limitations would begin to run at the approximate time that the VA would have responded to a request for records if Mr. Jackson had promptly made it in 1994.  The record does not clearly reflect how long it might have taken the VA to respond to such a request back in 1994, but the Court notes that Mr. Jackson contends that the VA responded to his 2007 request for records in 2010.  Assuming this same timeframe would have occurred in 1994, Mr. Jackson's inquiry into the accuracy of his psychiatric records would have yielded results by 1997.  In such circumstances, his Privacy Act claim would have accrued in 1997 and expired in 1999, more than a decade before Mr. Jackson actually commenced this case.

In cases under the Administrative Procedures Act, the statute of limitations begins running at the point in time that the agency's action becomes final.  *Velarde v. U.S.*, 992 F.Supp. 1235, 1240 (D. Colo. 1998).  Mr. Jackson does not indicate that he had, much less that he availed himself of, any appeal rights resulting from his termination in 1994, and thus, the Court assumes that the VA's decision to terminate Mr. Jackson became final on the date that termination was effected.  At that point, the six-year statute of limitations began running and the an Administrative Procedures Act claim became untimely by 2000, again, a full decade before this lawsuit was commenced.

Thus, the Court finds that the claims asserted by Mr. Jackson in Claim 3 are untimely and subject to dismissal.[8]

_____

[8]A liberal construction of Mr. Jackson's Amended Complaint might also reveal a claim for benefits under the Federal Employee's Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, which Mr. Jackson refers to as "Worker's Compensation."  It is not entirely clear that Mr. Jackson's allegations describe a claim cognizable under that statute, which awards benefits to federal employees who suffer "personal injury sustained while in the performance of his duty."

That leaves two claims by Mr. Jackson, both seeking disclosure of records maintained by the VA under the Privacy Act.  The Defendants do not contend that these claims are untimely; rather, they argue that Mr. Jackson has failed to state a cognizable claim in this regard.

Privacy Act claims alleging improper denial of access to records are subject to a fairly stringent pleading burden, occasioned by the convoluted statutory definitions contained within the Privacy Act itself.  *See e.g. Gowan v. U.S. Dept. Of Air Force*, 148 F.3d 1182, 1191 (10th Cir. 1998), *citing* 5 U.S.C. § 552a(d)(1).  To adequately state a claim for violation of the Privacy Act's access provisions, Mr. Jackson must plead, among other things, facts showing that the information he seeks are "records" as the statute defines that term, 5 U.S.C. § 552a(a)(4) (defining "record" as "any item, collection, or grouping of information about an individual . . . that contains his name, or the identifying number, symbol, or other identifying particular

---

5 U.S.C. § 8102(a).  An "injury" is defined as an "accident [or] a disease proximately caused by the employment."  5 U.S.C. § 8101(5).  Mr. Jackson describes the VA's decision for terminating him as being a finding that Mr. Jackson suffered from some mental illness.  However, he does not allege that that illness was "caused by [his] employment" at the VA, as opposed to being an organic mental illness or one caused by some other employment.  Thus, the Court has significant doubts that Mr. Jackson can state a claim under the FECA.

Even assuming he would otherwise have been eligible to make a claim under FECA, that statute generally requires that a claim for benefits be made within 3 years of the injury giving rise to a right to benefits.  5 U.S.C. § 8122(a).  Thus, a claim under FECA in this action would very likely be subject to dismissal as time-barred.

Mr. Jackson appears to believe that, because the VA did not initiate the benefits claiming process by providing him with a CA-7, his time for claiming benefits has not yet run. Admittedly, 20 C.F.R. § 10.111 states that the employer, upon learning of an employee's on-the-job injury, "shall furnish the employee with Form CA–7 ," that step appears to be secondary to FECA's requirement that the employee first notify the employer of the injury.  5 U.S.C. § 8119 ("an employee injured in the performance of his duty . . . shall give notice thereof" within 30 days of that injury).  The Amended Complaint does not clearly allege that Mr. Jackson gave the required notice to the VA.

Thus, even if the Court were to construe Mr. Jackson's Amended Complaint to include a claim for benefits under FECA, the Court finds that claim to be insufficiently pled and potentially subject to dismissal on limitations grounds.

assigned to the individual"); and that such a record is contained within a "system of records," 5

U.S.C. § 552a(a)(5) (defining "system of records" as "a group of any records . . . from which

information is retrieved by the name of the individual or by some identifying number, symbol, or

other particular . . . ."). *Gowan*, 148 F.3d at 1191.

Mr. Jackson's Amended Complaint falls far short of pleading these facts, making his

disclosure-based claims subject to dismissal. Nevertheless, this defect is one that is curable, at

least theoretically, by another opportunity for amendment of the complaint. Before the Court

embarks upon such a course of action, it may be more prudent to approach this dispute from

another angle.

The Court notes that Privacy Act cases premised upon a failure to disclose records upon

the subject individual's request are remedied solely by injunctive relief directing the agency to

make the required disclosure. 5 U.S.C. § 552a(g)(1)(B), (g)(3)(A). In other words, the VA can

resolve this action simply by disclosing the material requested by Mr. Jackson or by attesting to

the fact that no additional records reflecting the requested information exist, or both.[9] In an

effort to spare both the parties and the Court the time and expense of further litigation in a case

that appears to be readily amenable to resolution in this manner, the Court will grant the

Defendants' motion to dismiss Mr. Jackson's disclosure-based Claims 1 and 2 for failure to

adequately plead the necessary elements of a disclosure claim, but stay the effect of that

dismissal for a period of 60 days. During that 60-day period, the parties shall participate in a

---

[9]Presumably, if the requested records exist but the VA does not wish to disclose them pursuant to one of the exceptions contained within 5 U.S.C. § 552a(k), the VA may so state, and this litigation can focus on whether the VA has carried its burden of showing that the exception is properly invoked. 5 U.S.C. § 552a(g)(3)(A).

settlement conference before the Magistrate Judge, at which, the VA shall be prepared to specifically identify and disclose those records in its possession that are responsive to the two categories of requests by Mr. Jackson as discussed above, and to certify that no other documents responsive to that request are found within the VA's systems of records.[8]  Upon such a representation by the VA, Mr. Jackson will have obtained all of the relief available to him in this action, and the Court will entertain a motion to dismiss the action as moot.  If the VA identifies responsive documents that exist, but refuses to disclose them based on one of the exceptions available under the Privacy Act, Mr. Jackson can then amend his complaint to specifically address the merits of the VA's claim of an exemption.

There remains one final matter to address with regard to the Defendants' motion.  The Defendants request that the VA be substituted as the sole Defendant in the action, insofar as Privacy Act claims are brought against the relevant <u>agency</u>, not against individuals.  *See generally* 5 U.S.C. § 552a(d).  This argument is well-taken.  There being nothing more than

---

[8]It may seem unsatisfactory to Mr. Jackson to learn that records he believes should be in the VA's possession no longer exist.   Mr. Jackson may even desire an explanation as to why some documents he seeks may be missing.  Unfortunately, the nature of an access-based Privacy Act proceeding is directed at ascertaining <u>what</u> documents exist or do not exist, not <u>why</u> those documents do or do not exist.

Arguably, a claim under 5 U.S.C. § 552a(g)(1)(C), which requires an agency to maintain records with sufficient accuracy and completeness as is necessary under the circumstances might permit Mr. Jackson to delve into questions of <u>why</u> certain documents may no longer exist in the VA's records, but the scope of a completeness challenge is necessarily circumscribed by the types of "determination[s] relating to qualifications, character, rights, or opportunities of or benefits to" the individual that would be made as a result of such records.  *Id.*  Here, the "determination" made by the VA with regard to Mr. Jackson's qualifications to serve as a Ward Clerk was made with finality nearly two decades ago.  The Court has some difficulty imagining that the VA is required to keep extensive records regarding the basis for a two decades-old personnel decision to which no conceivable legal challenge can now be mounted.  Under such circumstances, a completeness challenge to the VA's failure to maintain the records that Mr. Jackson desires is likely to fail.

Privacy Act claims arguably surviving this ruling, the caption of this case is amended to reflect that Mr. Jackson's claims are brought only against the VA, not against any individual Defendant or any other entity.

### C. Mr. Jackson's Objections

Mr. Jackson has raised Objections pursuant to Fed. R. Civ. P. 72(a) with regard to several Orders by the Magistrate Judge. The Court addresses each of those Objections in turn.

Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, Mr. Jackson's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

1. Objections to December 16, 2010 Order

On December 16, 2010, the Magistrate Judge entered an Order (**# 36**) denying Mr. Jackson's motion for leave to file an amended pleading (**# 30**). In that motion, Mr. Jackson sought to add additional Defendants to this action, including Eric Shinseki, Secretary of Veteran's Affairs (whom the Magistrate Judge found had already been named as a party by Mr. Jackson) and the United States of America. Mr. Jackson's request was based on two assertions – that 5 U.S.C. § 552a(g)(4) "holds that the United States is liable for an agency's violation of the Privacy Act," and because 38 U.S.C. § 5103A(a)(1) "places a duty on [Mr. Shinseki] to assist

[Mr. Jackson] in establishing his claims."[9]   The Magistrate Judge found that, as Mr. Jackson's claims arose exclusively under the Privacy Act, the relevant agency – the VA – was the only proper Defendant.

Mr. Jackson's Objections assert that the Magistrate Judge was incorrect in concluding that "the only relief Mr. Jackson seeks is under the Privacy Act," and indeed, Mr. Jackson goes on to characterize his claims as arising under a variety of statutory and regulatory obligations that do not appear in the Amended Complaint, including 38 U.S.C. § 5701(a)(b)(4)[9]; 38 U.S.C.§ 7332[9]; 5 U.S.C. § 552[9]; and the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4321 *et seq.,*[10] among others.

The Court finds no error by the Magistrate Judge.  Mr. Jackson's initial motion made no mention of an intention to add new claims arising under these statutes and did not proffer a proposed amended pleading demonstrating how such claims would be couched.  Rather, the motion simply sought to add two additional Defendants to the caption (one of whom was already named), making reference only to the Privacy Act and an irrelevant reference to proceedings in claims for Veteran's Benefits.  Under these circumstances, the Magistrate Judge did not err in

---

[9]38 U.S.C. § 5103A entails obligations on the Secretary of Veteran's Affairs to assist a claimant seeking Veteran's Benefits under 38 U.S.C. § 5100 *et seq.*  Once a claimant has applied for benefits, the Secretary "shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim."

[9]Requiring the Secretary to disclose records relating to a claim for veteran's benefits to the claimant.

[9]Requiring the VA to maintain confidentiality of medical records of patients.

[9]Requiring agencies to make certain public information about its operations and regulations available.

[10]Requiring nondiscrimination in employment on the basis of prior military service.

canvassing Mr. Jackson's Amended Complaint and ascertaining that the only colorable claim

therein was one under the Privacy Act, for which only the VA is the proper defendant.

Accordingly, the Court overrules Mr. Jackson's Objections and affirms the Magistrate Judge's

ruling.

    2.  February 7, 2011 Order

        On February 7, 2011, the Magistrate Judge entered a Minute Order **(# 50)** denying Mr.

Jackson's Motion for Disclosure **(# 14)**.  That motion sought various items of discovery, both in

the form of specific interrogatories and requests for production, and more general requests that

the Defendants disclose various benefits to which Mr. Jackson is entitled.  The Magistrate

Judge's Minute Order simultaneously denied Mr. Jackson's discovery motion and stayed

discovery pending a ruling on the Defendants' then-pending motion to dismiss.

        Mr. Jackson's Objections are somewhat discursive, referencing both commentary on Fed.

R. Civ. P. 26, various facts amplifying certain allegations in the Amended Complaint, and so on.

The Court finds Mr. Jackson's Objections to be without merit.  The Magistrate Judge has broad

discretion to manage discovery as appropriate given the circumstances of the case, and here, the

record indicates that the Magistrate Judge denied Mr. Jackson's requests for discovery, in part,

due to a belief that the Defendants' then-pending motion to dismiss might narrow (if not dispose

of) the claims at issue in this case.  For this and many other reasons, the Court finds that the

Magistrate Judge's decision to deny discovery until pending dispositive motions were resolved

was not clearly erroneous or contrary to law.  Mr. Jackson's Objections are thus overruled.


    3.  May 11, 2011 Order

On May 11, 2011, the Magistrate Judge entered a Minute Order **(# 66)** denying Mr. Jackson's Emergency Motion to Effectuate Service **(# 57)**. That motion expressed concern that the Defendants had not been properly served and sought an order directing the U.S. Marshal to make service upon each Defendant. The Magistrate Judge denied the motion as moot, "accept[ing] the government's concession that all Defendants have been properly served." In addition, the Minute Order reflected the Magistrate Judge's continued stay of discovery pending a ruling on the Defendants' dispositive motion.

Mr. Jackson's Objections raise a variety of concerns that, despite the Court's best efforts to correlate them to the issues in this case, are of no apparent significance. Having examined Mr. Jackson's underlying motion, the Magistrate Judge's ruling, and the reasons therefor, the Court finds that the Magistrate Judge's decision was not clearly erroneous or contrary to law.

## CONCLUSION

For the foregoing reasons, the Defendants' initial Motion to Dismiss **(# 42)** is **DENIED AS MOOT**. The Defendants' Motion to Dismiss the Amended Complaint **(# 51)** is **GRANTED IN PART**, insofar as Mr. Jackson's Claim 3, challenging his termination from his job at the VA, is **DISMISSED** as untimely; his Claims 1 and 2, which seek disclosure of certain information from the VA pursuant to the Privacy Act, are **DISMISSED WITHOUT PREJUDICE** for failure to state a cognizable claim under Fed. R. Civ. P. 12(b)(6). The dismissal of Claims 1 and 2 is **STAYED** for 60 days, during which the parties shall participate in a settlement conference before the Magistrate Judge as set forth herein. The caption of the case is **AMENDED** to substitute the United States Department of Veterans' Affairs as the sole Defendant in this action. Mr. Jackson's Objections **(# 40, 52, 67)** to rulings by the Magistrate Judge are **OVERRULED**.

18

Dated this 9th day of August, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge