**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 10-cv-02596-MSK-CBS

**DAVID JACKSON,**

    Plaintiff,
v.

**ERIC KEN SHINSEKI, United States Secretary of Veterans Affairs, and
LYNETTE A. ROFF, Director, VA Eastern Colorado HCS,**

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

    **THIS MATTER** comes before the Court pursuant to Mr. Jackson's Motion for New Trial **(# 81)**, and the Defendants' response **(# 86)**; Mr. Jackson's "Emergency Motion Pursuant to 42 U.S.C. § 1983" **(# 88)**; Mr. Jackson's Emergency Motion for Clarification **(# 94)**; the Defendants' Motion to Dismiss **(# 100)**; and Mr. Jackson's Motion Pursuant to Fed. R. Civ. P. 60(b) **(# 101)** (which appears to have been filed twice, an identical copy appearing also at Docket **# 102**).

    The Court has addressed this matter in some detail in its August 9, 2011 Opinion and Order Granting, In Part, Motion to Dismiss **(# 73)**, and to the extent necessary, incorporates that discussion herein. It is sufficient, for purposes of this Order, to summarize this matter as follows. Until 1994, Mr. Jackson was employed by the Department of Veteran's Affairs ("VA"). In 1994, Mr. Jackson the VA directed Mr. Jackson to undergo a mental health evaluation. The precise outcome of that evaluation remains somewhat unclear, but it appears that Mr. Jackson

did not thereafter return to work at the VA. In or about 2000, in a proceeding in Arapahoe County, the VA disclosed certain medical and mental health records relating to Mr. Jackson to Arapahoe County and Mr. Jackson's ex-wife. (This disclosure appears to have been pursuant to a written release signed by Mr. Jackson.) The Court understood Mr. Jackson's claims in this action to be essentially twofold: (i) a Privacy Act request, seeking to obtain copies of the VA's records with regard to his employment, the mental health evaluation, the materials disclosed to Arapahoe County, and any other records relating to him; and (ii) some sort of challenge to the apparent termination of his employment in 1994.

In the Court's August 9, 2011 Opinion, the Court examined these claims in some detail, concluding that his challenge to his termination was untimely regardless of how that claim was constructed. The Court also noted that Mr. Jackson's Privacy Act claim was insufficiently pled, but noted that it could arguably be corrected via amendment. Rather than subject the parties to additional motion practice, the Court observed that the Privacy Act claim could likely be rendered moot (and therefore resolved) by the VA canvassing its files and producing all records it possessed relating to Mr. Jackson. The Court's Opinion indicated that it was granting the Defendant's motion to dismiss Mr. Jackson's Privacy Act claim, albeit with leave to replead, but stayed that dismissal (and repleading) until the parties engaged in a Settlement Conference with the Magistrate Judge in an attempt to resolve the Privacy Act component of the case.

The Magistrate Judge conducted the Settlement Conference on October 4, 2011 (**# 87**). At that Conference, after engaging in some colloquy with the parties,[1] the Magistrate Judge

---

[1] It very quickly becomes clear that this Court's reference to a "Settlement Conference" was somewhat inapt, as the conference brought the parties no closer to reaching a voluntary resolution of the action. Nevertheless, the Magistrate Judge did complete a key task: making a

permitted the Defendants to call two witnesses to explain the searches that were performed for Mr. Jackson's records and the materials that were discovered and produced. Ms. Poore, a Human Resources Specialist with the VA, testified that she obtained Mr. Jackson's complete official personnel file (encompassing all of his federal employment) and produced it to him.  In response to Mr. Jackson's cross-examination, Ms. Poore acknowledged that she only had access to his employment records, not his military records, medical records, or any other non-employment materials relating to him. The Defendants then called Mr. Sternesky, who testified that he searched through Mr. Jackson's existing medical records and located two releases signed by Mr. Jackson permitting the disclosure of certain information (which have apparently been produced to Mr. Jackson).  But he also stated that in or about 2000, when the VA allegedly released documents to Mr. Jackson's ex-wife and Arapahoe County officials, the VA lacked systems in place that would permit Mr. Sternesky to ascertain or identify what documents may have been produced by the VA at that time.  Reviewing the releases, the Magistrate Judge observed that there was a place on the releases for a VA employee to physically record data identifying the records that were produced in response, but that section had not been completed.  Discussion then turned to the question of whether the VA maintained a psychiatric file on Mr. Jackson that was separate from the medical files that Mr. Sternesky reviewed, and although Mr. Sternesky believed that the medical records included psychiatric records, he lacked personal knowledge as to what additional records may have been kept during the time period at issue.

The Magistrate Judge then discussed with the Defendants what additional information

---

record as to what materials the Defendants had searched for responsive documents, what documents were obtained through such search(es), and which of those documents were ultimately produced to Mr. Jackson.

would be necessary in order to conclusively establish that the VA had searched all available information and produced all of the relevant material. He directed that the Defendants produce a supplemental report addressing "what further searches you've undertaken, what additional individuals you've contacted to get some clarification as to how records were maintained in 1999 and 2000, and to find out to what extent, if any, you can identify the policies and procedures that were in effect in 1999 and 2000." On November 4, 2011, the Defendants filed a Status Report **(#90)** purporting to address those issues. The report contained a supplemental affidavit from Mr. Sternesky which, although it did not contain the type of detail contemplated by the Magistrate Judge, affirmatively stated that he had obtained "all medical records, including [Mr. Jackson's] mental health records, ever produced" with regard to Mr. Jackson's treatment by the VA, and had disclosed all relevant portions of that record to Mr. Jackson.

The Magistrate Judge resumed the Settlement Conference on November 29, 2011 **(# 99)**. No transcript of that proceeding has been produced, and the minutes from the 18-minute hearing indicate that the hearing primarily dealt with certain motions that Mr. Jackson had filed in the interim. The Defendants then filed the instant Motion to Dismiss **(# 100)** this case as moot, arguing that they had produced all available documents responsive to Mr. Jackson's requests.

The Court has reviewed the Defendants motion, as well as Mr. Jackson's various *pro se* filings listed above.[2] Based on that review, the Court finds it appropriate to effectuate the dismissal of Mr. Jackson's Privacy Act claims for the pleading deficiencies noted in the prior Order. Further, to Court finds that the Defendants have adequately demonstrated that they have

---

[2]As usual, the Court has construed Mr. Jackson's *pro se* filings liberally under *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

reviewed all available materials and produced all relevant documents, such that it is appropriate to deny Mr. Jackson an opportunity to attempt to replead those claims, insofar as he has obtained all of the relief available to him under the portions of the Privacy Act that he has invoked; in other words, the Court finds those claims to be moot.

The Court recognizes that this result is not likely to be satisfactory to Mr. Jackson, and indeed, the Court is cognizant that this outcome does not address many questions that continue to vex him.  For example, he points out that in a 2007 letter to Congresswoman Diana DeGette, a VA representative stated that the VA had released information to Arapahoe County officials pursuant to a release signed by Mr. Jackson, yet he is frustrated by the fact that the VA is presently unable to identify what information was actually disclosed.  This is a reflection on the inherent limitations of the Privacy Act.  The statute is designed only to allow individuals to obtain <u>documents</u> that are maintained by a governmental agency.  As such, it is useful only where the particular information an individual seeks is both: (i) embodied in a physical document; and (ii) that the document remains in the agency's possession as of the date of the request.  The Act is not helpful where the information in question was apparently either never recorded in writing, or where a document that perhaps once existed is no longer present in the agency's records.

This case is a good example of the Privacy Act's limitations.  Mr. Jackson has persuasively alleged that the VA produced materials about him to Arapahoe County and his ex-wife in or about 2000.  That belief is corroborated by, among other things, Mr. Jackson's discussions with a judge who reviewed those materials and the statements in the VA's 2007 letter to Congresswoman DeGette.  But the Privacy Act does not help Mr. Jackson discover

precisely **what** documents were produced by the VA to Arapahoe County **if** – as appears to be the case here – the VA either failed to create a document that memorialized the records being produced (*i.e.* the VA employee responsible for logging the production on the written release form failed to do so) or, if it did create such a document, failed to retain that document to the present day (*e.g.* that it mistakenly purged the document, or simply lost it). The Privacy Act is not designed to offer Mr. Jackson a particular remedy in such event.[3]

The Court can understand that, in light of a loose end like this, Mr. Jackson would like to pursue alternative means to discover the information he seeks – *e.g.* by identifying and deposing the VA employee who produced the records (but failed to log that production). But discovery is only appropriate as a means to establish a legally-recognized claim for relief, and here, the Privacy Act does not provide Mr. Jackson with such a cognizable claim. Simply put, once the Defendants have produced all of the records they have in their possession relating to Mr. Jackson and the events he inquires about, it has discharged all of its obligations under the Privacy Act,

---

[3]Admittedly, 5 U.S.C. § 522a(g)(1)(C) contemplates that an agency may be held liable for "failing to maintain" records "with such accuracy [and] completeness as necessary" in order to prevent certain unfairly adverse determinations from being made against the individual. Furthermore, 5 U.S.C. § 522a(g)(2)(4) permits an individual to recover actual damages sustained in such an event. But the Court cannot say, on the record currently before it, that Mr. Jackson could state a colorable claim under this portion of the statute. With regard to the documents release to Arapahoe County, for example, the statutory violation would be the failure of the VA to make and retain a log identifying the documents produced. But the Court is aware of no facts articulated by Mr. Jackson to date to suggest that the VA's failure to maintain that log resulted in the sort of "adverse determination" against Mr. Jackson necessary to give rise to a cause of action under §522a(g)(1)(C). Any unfairly adverse determination against Mr. Jackson in the Arapahoe County proceeding would have resulted from the contents of the documents disclosed, not from the fact that the VA failed to keep an internal record of the particular documents it had disclosed. Because, despite the extensive proceedings occurring to date, the Court has no basis to believe that Mr. Jackson can assert a colorable claim under the Privacy Act in this respect, it denies him leave to replead to assert such a claim.

and any lingering questions that remain unanswered by that production are questions that the law (or at least the law identified by Mr. Jackson to this Court) does not assist Mr. Jackson in answering.

Because the Defendants have demonstrated that they have reviewed all available systems of records they maintain for materials responsive to Mr. Jackson's requests and represent that they have provided Mr. Jackson with copies of all responsive records in their possession, they have discharged all of their obligations under the Privacy Act. Accordingly, for the reasons stated in the Court's prior Order, Mr. Jackson's Privacy Act claims fail to state a claim under 5 U.S.C. § 522am, and are therefore dismissed. Because the Court finds merit in the Defendants' current Motion to Dismiss, the Court further denies Mr. Jackson leave to replead, finding that any disclosure-based Privacy Act claim he could assert has been rendered moot by full disclosure of the available, responsive records. The Court has examined Mr. Jackson's various requests in the filings enumerated above and finds them to be without merit.

Mr. Jackson's Motion for New Trial **(# 81)**, his "Emergency Motion Pursuant to 42 U.S.C. § 1983" **(# 88)**; his Mr. Jackson's Emergency Motion for Clarification **(# 94)**; and his Motion Pursuant to Fed. R. Civ. P. 60(b)(**(# 101, 102)** are **DENIED**. The Defendants' Motion to Dismiss **(# 100)** is **GRANTED**. Mr. Jackson's Amended Complaint **(# 47)** is **DISMISSED** in is

entirety, and the Court **DENIES** him leave to replead, finding that the claims he appears to intend to assert are moot. The Clerk of the Court is directed to close this case.

Dated this 2nd day of September, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge